UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MICHAEL D. HARRIS,

               Petitioner,

v.

S.L. BURT,

               Respondent.

_____/

Case No. 1:18-cv-661

Honorable Robert J. Jonker

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition will be dismissed. The Court will exercise its discretion and decline to review the petition under the concurrent sentence doctrine. In the alternative, the Court will dismiss the petition for failure to raise a meritorious federal claim.

**Discussion**

I.      Factual allegations

Petitioner Michael D. Harris is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. Following one jury trial and one bench trial in the Ingham County Circuit Court, Petitioner was convicted of two counts of second-degree murder, Mich. Comp. Laws § 750.317. On October 19, 1983, the court sentenced Petitioner to life imprisonment for the November 2, 1981, murder of 78-year-old Ula Curdy. On November 30, 1983, the court sentenced Petitioner to life imprisonment for the November 30, 1981, murder of 78-year-old Denise Swanson.

After Petitioner committed those murders, but before he was prosecuted, he harmed other elderly women. Around September 19, 1982, Petitioner raped, beat, and strangled to death 85-year-old Margorie Upson. A few days later, Petitioner, raped, beat, and strangled to death 84-year-old Louise Koebnick. A few weeks later, Petitioner robbed, raped, and strangled 68-year-old Lenore Neidhardt—but she survived. *Harris v. Borgert*, No. 91-2216, 1993 WL 16706 (6th Cir. 1993). She was able to identify Petitioner as her assailant. *Id.*

Petitioner was tried first in the Jackson County Circuit Court for his crimes against Lenore Neidhardt. On April 1, 1983, a jury convicted Petitioner of assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84, breaking and entering with the intent to commit larceny, Mich. Comp. Laws § 750.110, breaking and entering with the intent to commit criminal sexual conduct, *id.*, and first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b. *Harris*, 1993 WL 16706, at *2. The court sentenced Petitioner to 6 to 10 years for assault, 10 to 15 years

for breaking and entering with intent, and 60 to 90 years for first-degree criminal sexual conduct. *Id.*

Petitioner was serving his sentences for his crimes against Lenore Neidhardt when he was tried and convicted for murdering Ula Curdy and Denise Swanson.[1]

Years passed. The art and science of DNA testing improved. DNA samples from the murders of Margorie Upson, Louise Koebnick, and 91-year-old Florence Bell matched Petitioner's DNA profile. *People v. Harris*, Case Nos. 248247, 253337, 2005 WL 326827 (Mich. Ct. App., Feb. 10, 2005). The Washtenaw County prosecutor charged Petitioner with the murders of Ms. Upson and Ms. Koebnick. *Id.* Twenty years after the fact, separate Washtenaw County Circuit Court juries convicted Petitioner for the first-degree murders of Margorie Upson and Louise Koebnick. *Id.* He was sentenced to life imprisonment without parole for each murder conviction. *Id.*

Petitioner has mounted numerous collateral challenges to his convictions in the state courts[2] and in the Michigan federal courts,[3] to no avail. He has sought leave from the Sixth Circuit to file second and successive habeas petitions in the Michigan federal courts, but the Sixth Circuit has denied him relief each time.

---

[1] The Ingham County prosecutor only pursued charges against Petitioner with respect to the murders of Ula Curdy and Denise Swanson. Petitioner has submitted an affidavit executed by Lansing Police Department Detective Michael Debner indicating that Curdy and Swanson suffered strangulation injuries that were virtually identical to other victims, Edna Ryckeart and Edith Crossette. (Affid., ECF No. 3-1, PageID.53-54.) Petitioner was not charged for those murders.

[2] The Ingham County prosecutor reported that Petitioner filed seven motions for relief from judgment in the Ingham County cases, excluding his most recent motions regarding the DNA and palm print evidence. (June 27, 2017 Status Conference Tr., ECF No. 2-1, PageID.40.)

[3] This is Petitioner's seventh habeas petition in this Court. He filed five habeas petitions in the United States District Court for the Eastern District of Michigan.

On March 14, 2012, Petitioner petitioned the Ingham County Circuit Court, under Mich. Comp. Laws § 770.16, to order DNA testing of evidence from his Ingham County trials.[4] Section 770.16 of the Michigan Compiled Laws permits a defendant who is convicted of a felony at trial before January 8, 2001, to petition the circuit court to order DNA testing of biological material identified during the investigation leading to his conviction and, then, for a new trial based on the results of the testing. The section further provides:

(7)    If the results of the DNA testing are inconclusive or show that the defendant is the source of the identified biological material, both of the following apply:

(a) The court shall deny the motion for new trial.

(b) The defendant's DNA profile shall be provided to the department of state police for inclusion under the DNA identification profiling system act, 1990 PA 250, MCL 28.171 to 28.176. . .

(8)    If the results of the DNA testing show that the defendant is not the source of the identified biological material, the court shall appoint counsel pursuant to MCR 6.505(A) and hold a hearing to determine by clear and convincing evidence all of the following:

(a) That only the perpetrator of the crime or crimes for which the defendant was convicted could be the source of the identified biological material.

(b) That the identified biological material was collected, handled, and preserved by procedures that allow the court to find that the identified biological material is not contaminated or is not so degraded that the DNA profile of the tested sample of the identified biological material cannot be determined to be identical to the DNA profile of the sample initially collected during the investigation described in subsection (1).

(c) That the defendant's purported exclusion as the source of the identified biological material, balanced against the other evidence in the case, is sufficient to justify the grant of a new trial.

---

[4] Petitioner attached excerpts from the Ingham County Circuit Court Register of Actions to his most recent Sixth Circuit motion for permission to file a second or successive habeas petition. *In re: Michael Harris*, Case No. 17-2063 (6th Cir.) (Document 1-2, Page: 29).

Mich. Comp. Laws § 770.16.

Petitioner's motion did not result in a court order; however, it apparently motivated the prosecutor to test certain items presented as evidence to verify that the items matched Petitioner's DNA. *In re: Michael Harris*, Case No. 17-2063 (6th Cir.) (Document 1-2, Page: 31). DNA test results from the clothing of Ula Curdy indicated that the semen on the clothing was from a specifically identified individual, but not Petitioner. (June 25, 2016 Michigan State Police Lab Report, ECF No. 2-1, PageID.30-31.) Based on this new evidence, the prosecutor wrote the trial court judge and requested the court to appoint counsel for Petitioner with regard to his petition. (July 27, 2016 Corr., ECF No. 2-1, PageID.28-29.) The court did so.

During a December 2016 motion hearing, Petitioner's counsel identified two issues to be explored at an evidentiary hearing scheduled for January of 2017: an issue regarding palm-print evidence introduced at Petitioner's trial and the issue regarding the new DNA evidence. *See* Dec., 15, 2016 Motion Hr'g Tr., *In re: Michael Harris*, Case No. 17-2063 (6th Cir.) (Document 1-2, Page: 36-39). As matters stood at the December 2016 hearing, Petitioner had provided the trial court a compelling petition under Mich. Comp. Laws § 770.16. At Petitioner's trial, the prosecutor had relied on the testimony of an expert regarding testing conducted on the semen stain found on Ula Curdy's clothing. (Sept. 20, 1983, Trial Tr., ECF No. 2-1, PageID.37.) The new DNA evidence definitively tied that stain to another individual and that individual failed a lie detector test where he denied participation in Ula Curdy's death. (Oct. 12, 2016, Michigan State Police Lab Report, ECF No. 2-1, PageID.34.)

As of mid-December 2016, therefore, it appeared Petitioner had cleared the hurdle of Mich. Comp. Laws § 770.16, ¶7. Only the evidentiary hearing under Mich. Comp. Laws

§ 770.16, ¶8 remained. At the December 2016 hearing, however, the prosecutor disclosed that he had submitted additional items for DNA testing.

The January hearing was rescheduled. The Michigan State Police lab completed the additional DNA testing requested by the prosecutor. When the matter came before the trial court for a status conference on June 27, 2017, circumstances had changed significantly. The Michigan State Police lab report revealed that samples swabbed from Ula Curdy's anus contained DNA that matched Petitioner. (June 27, 2017, Status Conf. Tr., ECF No. 2-1, PageID.40.) Accordingly, the trial court concluded that Petitioner had failed to meet the requirements of Mich. Comp. Laws § 770.16, ¶7. (*Id.*, PageID.43.) Because the DNA test results identified Petitioner as the source of biological material at the crime scene, in keeping with the statutory mandate, the court denied Petitioner's motion for new trial. (*Id.*); *In re: Michael Harris*, Case No. 17-2063 (6th Cir.) (June 27, 2017, Order, Document 1-2, p. 74).

The prosecutor, to ensure that the DNA evidence also supported Petitioner's conviction for the murder of Denise Swanson, with the court's permission, submitted the evidence from Petitioner's trial for Ms. Swanson's murder to the Michigan State Police. (Michigan State Police Lab Report, ECF No. 4-1, PageID.88-92); *In re: Michael Harris*, Case No. 17-2063 (6th Cir.) (June 27, 2017, Order, Document 1-2, p. 74). That evidence also included matches to Petitioner's DNA. (Michigan State Police Lab Report, ECF No. 4-1, PageID.79-87.)

Petitioner filed a pro per application for leave to appeal the trial court's ruling in the Michigan Court of Appeals. By order entered February 6, 2018, the court of appeals denied leave. (Pet., ECF No. 1, PageID.8.) Petitioner then filed a pro per application for leave to appeal

in the Michigan Supreme Court. (*Id*., PageID.10.) The supreme court denied leave by order entered May 1, 2018. *People v. Harris*, 910 N.W.2d 293 (Mich. 2018).[5]

Before the Michigan Court of Appeals had denied Petitioner's application for leave, Petitioner turned to the Sixth Circuit Court of Appeals for permission to file another habeas petition in this Court. The Sixth Circuit again denied relief. (May 24, 2018 Order, ECF No. 1-1, PageID.21-24.) With regard to the new DNA evidence, however, the Sixth Circuit concluded the claims raised were neither second nor successive. (*Id*.) Therefore, Petitioner did not require permission from the Sixth Circuit before filing a habeas petition in this Court raising claims based on the new DNA evidence.

On June 12, 2018, Petitioner filed his habeas corpus petition.

The petition raises nine grounds for relief, paraphrased as follows:

I.      Actual innocence: newly discovered DNA test results link a new suspect to the crime-violating the Fourteenth Amendment.

II.     The state violated two stipulated agreements for evidentiary hearings (for the DNA evidence and the fingerprint expert) violating the Fourteenth Amendment Due Process Clause.

III.    On May 31, 2017, and December 15, 2016, the state court violated an agreement for defense experts to examine/monitor evidence and testing for DNA evidence and fingerprint expert.

IV.     Petitioner was denied his Fifth Amendment right to fair and timely notice of the charge when the state made claims, for the first time, regarding Petitioner's sexual penetration of Ula Curdy's anus.

---

[5] Although the Michigan Supreme Court denied leave to appeal, the court did vacate one portion of the trial court's order. The June 27, 2017, order stated, in part, "Pursuant to MCR 2.602(A)(3), this judgment resolves the last pending claim and closes the case." *People v. Harris*, 910 N.W.2d at 293. The Michigan Supreme Court vacated that part of the order because it was inconsistent with the trial court's obligation to entertain a second or subsequent motion for relief from judgment based on a retroactive change in law or a claim of new evidence. *Id.*

V.      The state violated the Petitioner's Sixth Amendment right to confront witnesses and evidence against him because the DNA tested items (six items) regarding the murder of Denise Swanson were not reported in 1983 to have biological materials on them.

VI.     The state violated the Petitioner's Sixth Amendment right to confront witnesses and evidence against him because the DNA tested items (anal swabs) regarding the murder of Ula Curdy were not reported in 1983 to have biological materials on them.

VII.    The state denied the Petitioner his Fifth Amendment right to notice of the charge in 2018 when it made new allegations that Petitioner sexually assaulted Denise Swanson based on the presence of Petitioner's DNA on Swanson's pubic area.

VIII.   Where the state falsely claimed to DNA test pubic hairs from the Curdy and Swanson cases that were destroyed in 1983, the Petitioner's federal due process rights were violated because the state compromised the evidence.

IX.     The state denied Petitioner federal due process where, in 2017 and 2018, the state denied Petitioner access to the courts, by closing the court files, while allowing the prosecution to conduct DNA testing under Mich. Comp. Laws § 770.16.

(Pet., ECF No. 1, PageID.6-10, 14-16.)[6]

II.      Concurrent Sentence Doctrine

The "concurrent sentencing doctrine" invests the court with discretion to decline to hear a substantive challenge to a conviction when the sentence the petitioner is serving on the challenged conviction is concurrent with an equal or longer sentence on a valid conviction. *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). The doctrine has its origins in appellate practice applicable to direct review of criminal cases. *See Benton v. Maryland*, 395 U.S. 784, 788-91 (1969); *Hirabayashi v. United*

---

[6] With regard to issues I-IV, Petitioner expressly represents that he raised them during his recent state court appeal. (*Id.*, PageID.6-10.) With regard to issues V-IX, the petition does not indicate whether Petitioner has presented the issues to all levels of the state court system. (*Id.*, PageID.14-16.)

*States*, 320 U.S. 81 (1943). In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody. *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976). The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand. *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-6448, 1990 WL 116538, at *3 (6th Cir. Aug. 13, 1990); *United States v. Jackson*, No. 99-5889, 2000 WL 1290360, at *2 (6th Cir. Sept. 7, 2000); *United States v. Bell*, No. 95-6479, 1997 WL 63150, at *3 (6th Cir. Feb. 12, 1997).

Although the doctrine has its roots in direct appeals, the federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody. *See, e.g., Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir. 1983); *VanGeldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974). The exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is allowed to stand. *Williams*, 714 F.2d at 555. "'[A]dverse collateral consequences' such as 'delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma[,]'" may be considered. *Buffin v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013). In *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010), the Sixth Circuit also included "an effect on . . . a potential pardon" and "the potential for use as evidence of a prior bad act" as additional adverse consequences. *Id.*

9

Such remote consequences, however, "are most salient on direct appeal, not on a collateral challenge." *Buffin,* 513 F. App'x at 448. The *Buffin* court pulled the list of collateral consequences from *United States v. DiCarlo*, 434 F.3d 447, 457 (6th Cir. 2006). The *DiCarlo* court, in turn, quoted the list from *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996). The *Rutledge* Court derived the list of collateral consequences from *Benton v. Maryland*, 395 U.S. 784, 790-91 (1969), and *Sibron v. New York*, 392 U.S. 40, 54-56 (1968). *DiCarlo*, *Rutledge*, *Benton* and *Sibron* were direct appeals. Moreover, *Benton* and *Sibron* considered the existence of collateral consequences because absent such a consequence there would have been no justiciable controversy in those cases. The *Benton* Court noted that the fact that it could conceive of collateral consequences that might give rise to a justiciable controversy and permit the court to exercise jurisdiction, did not deprive the concurrent sentencing doctrine of validity as a rule of judicial convenience. *Benton*, 395 U.S. at 791. The *Benton* Court simply chose to not apply it in that case. *Id*. at 792. *Rutledge* and *DiCarlo* (and the other cases cited in *DiCarlo*) are all double jeopardy cases where the existence of collateral consequences, no matter how slight, creates the multiple punishments barred by the Double Jeopardy Clause. Such slight or remote collateral consequences should not preclude application of the concurrent sentencing doctrine when jurisdictional and double jeopardy considerations are not at issue. If they did, the doctrine would simply disappear.

The present case is appropriate for application of the concurrent sentencing doctrine. Petitioner is serving life sentences for the murders of Ula Curdy and Denise Swanson. He is serving life sentences without parole for the murders of Margorie Upson and Louise Koebnick. The present petition challenges only Petitioner's conviction for the murder of Ula Curdy. Thus, even if the court were to vacate the latter conviction, the maximum relief available

would be invalidation of that sentence, still leaving Petitioner with three life sentences on his other convictions. Release from prison would not be available even if the murder conviction challenged in this petition were vacated.

Moreover, the sorts of collateral consequences that counsel against application of the doctrine seem almost ludicrous here. Petitioner has already worked himself up to the very peak of Michigan's habitual offender sentencing scheme. Michigan's first-degree murder statute already bars Petitioner from eligibility for parole. It is unlikely that a pardoning authority would be willing to overlook the strangulation and sexual assault of four elderly women, but not five. The stigma associated with the strangulation and sexual assault of five elderly women is certainly a significant burden, but it is not likely to be significantly heavier than the stigma associated with the strangulation and sexual assault of four elderly women.

If the concurrent sentencing doctrine retains any vitality—and the Supreme Court and the Sixth Circuit Court of Appeals indicate that it does—this is a case where it should be applied. Accordingly, the Court will exercise its discretion and decline to consider this habeas petition.

In the alternative, however, the Court will also address the petition on the merits.

III.    Second or Successive Petitions

Petitioner sought permission from the Sixth Circuit Court of Appeals before he filed his petition in this Court. In denying relief, the Sixth Circuit stated:

> If a habeas petition is second or successive, the petitioner must obtain leave from this court before filing it with the district court. *Magwood v. Patterson*, 561 U.S. 320, 330-31 (2010) (citing 28 U.S.C. § 2244(b)(3)(A)). "[A] petition is not second or successive when it raises a claim that was unripe for review when the first habeas petition was filed." *In re Tibbetts*, 869 F.3d 403, 406 (6th Cir. 2017),

*cert. denied*, 138 S. Ct. 661 (2018). "A claim is unripe when 'the events giving rise to the claim had not yet occurred.'" *Id.* (quoting *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010)). The events giving rise to Harris's claims related to the DNA testing began in 2016 when he first obtained that testing. Because he could not have presented those claims in a prior habeas petition, Harris is not required to obtain our authorization.

Harris's claim related to the fingerprint expert, however, involves events that occurred at the time of his trial. Accordingly, Harris must obtain our authorization to raise this claim. . . . Harris must make a prima facie showing that:

(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B); *see id.* § 2244(b)(3)(C). Harris has failed to make such a showing. Harris claims new evidence of misconduct by the MSP crime laboratory but fails to provide any evidence of misconduct in his specific case. . . . Harris's motion is **DENIED** as to his claim related to the fingerprint expert.

(May 24, 2018 Order, ECF No. 1-1, PageID.22-24.)

Petitioner has identified nine habeas grounds. Two of those grounds, issues II and III, relate to the fingerprint expert as well as the new DNA evidence. Petitioner's claims relating to the fingerprint expert are properly dismissed because they are second and/or successive. 28 U.S.C. § 2244(b).[7]

IV.     AEDPA standard

This action is governed by the AEDPA. The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the

---

[7]The Sixth Circuit concluded that § 2244(b)—part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA)—applied even though Petitioner's convictions predated the AEDPA. (May 24, 2018 Order, ECF No. 1-1, PageID.23.)

law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially

indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

V.    Petitioner's Claim of Innocence (Issue I)

Petitioner's claim of actual innocence fails to state a cognizable federal claim. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." But the *Herrera* Court did not close the door completely, stating in dicta: "[I]n a capital case a truly persuasive demonstration of 'actual innocence' made after trial would

render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished

between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free- standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. In the absence of Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit. The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review. *See Cress*, 484 F.3d at 854 (citing cases). Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, his petition does not implicate the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case."). Petitioner, therefore, cannot obtain habeas corpus relief on his freestanding claim of actual innocence.

Even if this were a capital case, however, Petitioner would not be entitled to relief because he has not made a persuasive showing of actual innocence. Petitioner's desire to pick through the DNA test results and present as "new evidence" the results that favor him and simply ignore the results that do not is an attempt to have his cake and eat it too. Based on the reports submitted, the trial court concluded that Petitioner's DNA was in the victim's anus. (June 27, 2017, Status Conference Tr., ECF No. 2-1, PageID.43.) Even if Petitioner's DNA was not found

on the victim's clothing, or several other items of evidence, the presence of his DNA on the victim renders Petitioner's claim of innocence wholly unpersuasive.

The state courts' rejection of Petitioner's claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Even though Petitioner disagrees with, and finds incredible, the conclusions of the lab report regarding the anal swabs, he does not dispute the existence of the report. Therefore, the trial court's conclusions are reasonable on the record. Accordingly, Petitioner would not, even if his life were on the line, be entitled to habeas relief on his claim of innocence.

VI.    Notice of Sexual Assault Charges (Issues IV and VII)

The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to provide him an adequate opportunity to prepare his defense. *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). Fair notice requires that the offense be described with some precision and certainty to apprise the accused of the crime with which he stands charged. *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id*. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner"

so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Petitioner contends the state failed to provide such notice with regard to charges that he sexually assaulted Ula Curdy and Denise Swanson. Petitioner was charged with and convicted of the murders of Ula Curdy and Denise Swanson. He was not charged with or convicted of sexually assaulting them. Accordingly, his claim is meritless.

VII.    Confrontation (Issues V and VI)

Petitioner also contends the trial court denied him the opportunity to confront the witnesses and evidence against him because the DNA tested items relevant to the murders of Ula Curdy and Denise Swanson were not reported to have biological material on them in 1983. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Petitioner does not argue that he was denied his confrontation rights at his criminal trials. Rather, he claims the court did not permit him to confront witnesses (and/or evidence) at the June 27, 2017, status conference. The June 27, 2017, status conference was not a trial. It was

not even an evidentiary hearing. Neither due process nor rights of confrontation require such procedures under these circumstances.

The Supreme Court has recognized that the federal constitution does not provide a broad, freestanding right to access DNA evidence in the post-conviction setting. *See Dist. Atty's Office v. Osborne*, 557 U.S. 52 (2009). "A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* at 68. Instead, states have "flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. Where a state has created a post-conviction right to access DNA evidence, a prisoner has only a limited liberty interest in the procedure. *Id.* at 67-69. "Federal courts may upset a state's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive right involved. *Id.* at 69. The *Osborne* Court reviewed Alaska's judicially created procedures for accessing DNA evidence, which provides for discovery of DNA evidence when that evidence is newly available, material and diligently pursued. The Court concluded that Alaska's procedures, which tracked both federal law, *see* 18 U.S.C. § 3600(a), and the law of other states, were "not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental liberty.'" *Osborne*, 557 U.S. at 70 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)).

The Michigan statute governing post-conviction DNA procedures "is more comprehensive than the state procedures sanctioned by the *Osborne* court." *In re Smith*, 349 F. App'x 12, 15 (6th Cir. 2009). The Michigan statute does not call for a hearing, much less a trial, to determine whether the DNA testing report is inconclusive or whether it shows that the defendant is the source of the biological material. That determination would be apparent on the face of the

report. Only if the DNA testing report shows that the defendant is not the source of the identified biological material is a hearing required and then, if the results of that hearing favor the defendant, there will be a new trial.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The right to confront witnesses is a trial right. *Barber v. Page*, 390 U.S. 719, 725 (1968) *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004) ("The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness."); *Kentucky v. Stincer*, 482 U.S. 730, 738 n.9 (1987) ("The Court sometimes has referred to a defendant's right of confrontation as a 'trial right.'"). Several federal appellate courts have concluded that the right does not apply to post-conviction proceedings. *See, e.g., Oken v. Warden, MSP*, 233 F.3d 86, 92-93 (1st Cir. 2000); *United States v. Martinez*, 415 F.3d 239, 242-44 (2d Cir. 2005); *United States v. Fernandez*, 526 F. App'x 270, 284 n.13 (4th Cir. 2013); *United States v. Kirby*, 418 F.3d 621, 627-28 (6th Cir. 2005); *Castillo-Hernandez v. Holder*, 596 F. App'x 645, 651 (10th Cir. 2014); *United States v. Boyd*, 131 F.3d 951, 954 (11th Cir. 1997). Indeed, the Sixth Circuit has concluded that there simply is "no Supreme Court precedent—or for that matter, precedent from any other federal court—suggesting that the right to be present enshrined in the Confrontation Clause extends to a post-conviction, post-sentence motion . . . ." *Brown v. Warden, Mansfield Corr. Inst.*, 492 F. App'x 533, 539 (6th Cir. 2012).

The determination that the DNA testing report shows that Petitioner is the source of biological material involves neither witnesses nor a trial. Petitioner's claim that the trial court

violated his right to confrontation when it denied his motion for new trial without permitting Petitioner to confront the DNA report's author is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this issue.

VIII. <u>Brady Violation (Issues V, VI, and VIII)</u>

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Court held that, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another

source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted).

Petitioner raises *Brady*-type claims when he suggests that the prosecutor: (1) withheld from the defense the fact that six pieces of evidence in his trial for the murder of Denise Swanson and anal swabs in his trial for the murder of Ula Curdy contained biological material that could be tested for DNA; and (2) pubic hairs were available for testing. Petitioner's *Brady* claim falls short with respect to every element. No physical evidence was withheld from the defense. The documents submitted by Petitioner indicate that he had access to the evidence inventories prepared by the investigators. Moreover, even if the listed evidence had been withheld, Petitioner suffered no prejudice. At the time of Petitioner's trial in 1983 testing of the evidence would not have revealed any information material to his defense. Finally, that evidence never favored Petitioner then, and, with the scientific tests available now, that evidence is decidedly unfavorable to Petitioner.

Petitioner has failed to demonstrate that the state court's rejection of his claims regarding the evidence are contrary to, or an unreasonable application of, *Brady*, the clearly established federal law on this issue. Accordingly, he is not entitled to habeas relief.

IX.     Procedural Improprieties under Mich. Comp. Laws § 770.16

Finally, Petitioner suggests that the trial court acted improperly under Mich. Comp. Laws § 770.16 when it closed the court files during 2017 and 2018 yet permitted the prosecutor to continue the DNA testing of the evidence relating to the Swanson murder. It appears that Petitioner

22

is referencing the following statement in the trial court's order: "Pursuant to MCR 2.602(A)(3), this judgment resolves the last pending claim and closes the case." *In re: Michael Harris*, Case No. 17-2063 (6th Cir.) (June 27, 2017 Order, Document 1-2, Page: 74). The Michigan Supreme Court vacated that language, concluding that it was inappropriate in the context of a criminal prosecution where convictions may always be reconsidered under Mich. Ct. R. 6.502(G)(2). *People v. Harris*, 910 N.W.2d 293 (Mich. 2018). Under that rule, a defendant may file a second or subsequent motion for relief from judgment based on a retroactive change in law or a claim of new evidence. *Id.* The Supreme Court had so instructed the trial court two years earlier as well. *See People v. Harris*, 885 N.W.2d 466 (Mich. 2016).

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). If the trial court violated the Michigan Court Rules or a state statute when it "closed" Petitioner's criminal cases, that violation raises a state-law issue. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. A state court's determination on a state-law issue only rises to the level of a due process violation if it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Petitioner fails to identify any fundamental principle of justice offended by the state trial court's closing of Petitioner's criminal cases. Moreover, Petitioner has failed to identify any harm that accrued to him because the cases were "closed" between July 27, 2017, and May 1,

2018, when the Michigan Supreme Court remedied any error. Petitioner would have to demonstrate the error was harmful:

> For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S., at 637, 113 S. Ct. 1710 (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 88 L.Ed.2d 814 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht, supra*, at 637, 113 S. Ct. 1710 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S. Ct. 500, 142 L. Ed. 2d 521 (1998) (per curiam ).

*Davis v. Ayala*, 135 S. Ct. 2187, 2197-198 (2015). He has not alleged any harm here; accordingly, he is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court declines to consider the petition under the concurrent sentence doctrine. Alternatively, if the Court were to consider the petition, it would summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

24

Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

This Court's dismissal of Petitioner's action under the concurrent sentence doctrine stands entirely separate from the merits of Petitioner's claim. The Court grants Petitioner a certificate of appealability with regard to dismissal under the concurrent sentence doctrine.

The Court's alternative dismissal under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court

summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims on the merits was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability as to the dismissal on the merits.

The Court will enter a Judgment and Order consistent with this Opinion.


Dated:     July 24, 2018          /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE